UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| CMEG NYMEX INC., | : |
| Plaintiff, | : No. 09-CV-03677 (GBD) |
| -against- | : ECF FILED |
| OPTIONABLE, INC., KEVIN CASSIDY, PIERPONT CAPITAL, INC., EDWARD O'CONNOR, RIDGECREST CAPITAL, INC., and MARK NORDLICHT, | : ORAL ARGUMENT REQUESTED |
| Defendants. | : |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS
THE COMPLAINT AND STRIKE CERTAIN ALLEGATIONS CONTAINED THEREIN
ON BEHALF OF DEFENDANTS EDWARD O'CONNOR
<u>AND RIDGECREST CAPITAL INC.</u>**

**McCormick & O'Brien, LLP**

**Liam O'Brien**
**Marni Rae Robin**
42 West 38th Street, Suite 701
New York, New York 10018
Tel: (212) 286-4471
Fax: (212) 504-9574

*Attorneys for Edward O'Connor and
Ridgecrest Capital, Inc.*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................................1

ARGUMENT..................................................................................................................................2

I.   Allegations of Securities Fraud and Common Law Fraud against O'Connor made upon Information and Belief are Unsupported by the Source Documents ...................................2

II.  The Claim of Controlling Person Liability Must be Dismissed .........................................5

III. The Claim of Negligent Misrepresentation is Preempted by New York's Martin Act .......6

IV.  This Court Should Decline Supplemental Jurisdiction over all Common Law Claims against O'Connor and Ridgecrest ........................................................................................8

CONCLUSION................................................................................................................................9

# **TABLE OF AUTHORITIES**

**Cases**

*Boguslavsky v. Kaplan,* 159 F.3d 715 (2d Cir. 1998) ................................................................... 5

*Castellano v. Young & Rubicam,* 257 F.3d 171 (2d Cir. 2001) ..................................................... 7

*CPC Int'l Inc. v. McKesson Corp.,* 70 N.Y.2d 268, 519 N.Y.S.2d 804 (1987) .............................. 7

*Joffee v. Lehman Bros., Inc.,* No. 04 Civ. 3507 (RWS), 2005 WL 1492101 (S.D.N.Y. June 23, 2005) ........................................................................................................................................ 6, 7

*Kassover v. UBS,* No. 08 CV 02753 (LMM), 2008 WL 5331812 (S.D.N.Y. Dec. 19, 2008) ......... 7

*Kerusa Co., LLC v. W10Z/515 Real Estate Ltd. Pshp.,* 12 N.Y.3d 236, 2009 WL 856327 (2009) ............................................................................................................................................ 7

*Ledford v. Rapid-Am. Corp.,* No. 86 Civ. 9116 (JFK), 1988 WL 3428, (S.D.N.Y. Jan. 8, 1988) ... 5

*Lipsky v. Commonwealth United Corp.,* 551 F.2d 887 (2d Cir. 1976) ........................................... 4

*Nanopierce Tech. v. Southridge Capital Mgmt LLC,* No. 02 Civ. 0767 (LBS), 2003 WL 22052894 (S.D.N.Y. Sept. 2, 2003) ................................................................................................ 7

*Pro Bono Investments, Inc. v. Gerry,* No. 03 Civ. 4347 (JGK), 2005 WL 2429787 (S.D.N.Y. Sept. 30, 2005) ............................................................................................................................... 6

*Rombach v. Chang,* 355 F.3d 164 (2d Cir. 2004) ........................................................................... 6

*SEC v. First Jersey Sec.,* 101 F.3d 1450 (2d Cir. 1996) ................................................................. 5

**Statutes, Rules**

15 U.S.C. § 78j(b) ............................................................................................................................ 1

15 U.S.C. § 78u-4(b) .............................................................................................................. 1, 3, 5, 8

15 U.S.C. § 78t(a) ....................................................................................................................... 1, 5

17 C.F.R. § 240.10b-5 ..................................................................................................................... 1

28 U.S.C. § 1367(c)(3) ................................................................................................................ 2, 8

Fed.R.Civ.P. 9(b) ..................................................................................................................... passim

Fed.R.Civ.P. 12(b)(6) .............................................................................................................. passim

Fed.R.Civ.P. 12(f) .................................................................................................................... 1, 2, 5

Fed.R.Evid.402 ...........................................................................................................................5

Fed.R.Evid.403 ...........................................................................................................................5

N.Y. G.B.L. §§ 352, *et seq.*..................................................................................................1, 6

N.Y. G.B.L. § 352-c....................................................................................................................6

Defendants Edward O'Connor ("O'Connor") and Ridgecrest Capital, Inc. ("Ridgecrest") submit this Memorandum of Law in support of their motion to dismiss the Complaint against them filed by Plaintiff CMEG NYMEX Inc. ("NYMEX" or "Plaintiff") on or about April 10, 2009 ("Complaint" or "Cpt.") and to strike certain allegations contained in the Complaint.

**PRELIMINARY STATEMENT**

In the interest of judicial economy, O'Connor and Ridgecrest join in the motion to dismiss the Complaint and to Strike Certain Allegations as Immaterial ("Optl. MTD") made by co-Defendant Optionable, Inc. ("Optionable"), and hereby incorporate by reference herein the arguments and authorities set forth in the Optl. MTD as they apply to O'Connor and Ridgecrest.

In addition to the arguments and authorities set forth in the Optl. MTD, O'Connor and Ridgecrest move to strike portions of the Complaint against O'Connor pursuant to Fed.R.Civ.P. 12(f). Further, O'Connor and Ridgecrest move to dismiss the fraud claims against them pursuant to Section 10(b) of the Securities Exchange Act ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. 240.10b-5 (the "First Count") and New York's common law (the "Fourth Count") for additional reasons pursuant to Fed.R.Civ.P. 9(b) and the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b) ("PSLRA").

O'Connor moves pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the claim against him for control person liability under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a) (the "Second Count").

Furthermore, in addition to the reasons addressed in the Optl. MTD, O'Connor and Ridgecrest move to dismiss the claim of negligent misrepresentation (the "Sixth Count"), as that claim is preempted by New York State's Martin Act, N.Y. G.B.L. §§ 352, *et seq.*

1

Finally, O'Connor and Ridgecrest respectfully request this Court to decline to exercise its supplemental jurisdiction over all common law claims (to the extent they are not otherwise dismissed) made against them pursuant to 28 U.S.C. § 1367(c)(3).

In support of their motions, O'Connor and Ridgecrest, herein below, provide supplemental arguments and authorities to those set forth in the Optl. MTD.

## ARGUMENT

Optionable, in its MTD, meticulously sets forth arguments and authorities in support of dismissal of the Complaint pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6) and to strike certain allegations contained in the Complaint pursuant to Fed.R.Civ.P. 12(f). Such arguments and authorities are hereby incorporated by reference as if they were fully set forth herein on behalf of O'Connor and Ridgecrest.

**I.   Allegations of Securities Fraud and Common Law Fraud against O'Connor made upon Information and Belief are Unsupported by the Source Documents**

Numerous paragraphs of the Complaint, which comprise virtually all of the allegations in support Plaintiff's federal and state law claims for fraud based upon an "unlawful scheme," are based "upon information and belief." *See* Cpt. at 1. Plaintiff identifies the sources of these allegations based "upon information and belief" to be "recent court actions brought by the United States, the SEC, the CFTC and the Federal Reserve Board against Optionable, Cassidy, O'Connor." Cpt. ¶ 14. Plaintiff's "information and belief" source documents consist of pleadings and/or a settlement agreement for matters that have not been adjudicated on the merits, and therefore, the allegations based upon such improper sources are immaterial as a matter of law under Fed.R.Civ.P. 12(f) and should be stricken from the Complaint. *See* Optl. MTD at 10-11. Additionally, Plaintiff's allegations made solely in reliance upon such improper sources also are

2

insufficient to state claims for relief for fraud pursuant to Fed.R.Civ.P. 9(b) and the PSLRA, and likewise, should be stricken from the Complaint.[1] *See* Optl. MTD at 11-13.

Moreover, certain of the allegations contained in the Complaint are not, in fact, based upon the sources cited by the Plaintiff.[2] A review of Plaintiff's "information and belief" source documents reveals that the following allegations against O'Connor are <u>not</u> derived from such source documents:[3]

- ¶ 24: "after … O'Connor received pricing information from Lee by telephone call or instant message, [another Defendant] then reshaped the information to make it look like it reflected genuine offers from independent traders of energy derivatives…."

- ¶ 35: "… O'Connor … realized that such an independent service would uncover Lee's losses and mis-valuation of his positions and that discovery would lead, *inter alia,* to the termination of the revenues Optionable received from BMO. That, [O'Connor] also realized, would cause a significant drop in Optionable's business and its stock price, and thus cause [his] own apparent wealth (largely) the value of [his] Optionable stock) to disappear."

- ¶ 37: "Specifically, defendants, principally … O'Connor …, proposed and developed a new service to be offered by Optionable called "Opex Analytics" and "RealMarks". [sic]

- ¶ 39: "Thus, after Lee filled out part of the grid with his trading positions, … O'Connor then arranged for other parts of the grid (supposedly showing other

---

[1] The complaints filed by the CFTC and the SEC in each of their respective actions against various of the Defendants in the instant action are presently subjects of pending motions to dismiss pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6).

[2] The Complaint has generally identified in paragraph 14 the following sources of its "information and belief allegations": (a) Indictment, *United States of America v. Kevin Cassidy,* No. S1 08 Cr. 1101 (S.D.N.Y); (b) Complaint, *Securities and Exchange Commission v. David Lee, et al.,* No. 08 Civ. 9961 (GBD) (S.D.N.Y); (c) Complaint, *Commodity Futures Trading Commission v. Kevin Cassidy, et al.,* No. 08 Civ. 9962 (GBD) (S.D.N.Y); and (d) Order of Prohibition Issued upon Consent Pursuant to Section 8(e) of the Federal Deposit Insurance Act, as Amended, *In the Matter of David Lee,* Docket No. 2008-048-E-I (Bd. of Gov., F.R.S., Wash. D.C.).

[3] While the below listed allegations against O'Connor unequivocally are <u>not</u> supported by the purported sources, we expressly do <u>not</u> suggest that any or all other allegations contained in the Complaint are supported by the improper source documents. To the contrary, we submit that there are numerous other allegations that arguably also are not supported by the improper source documents.

> market prices from independent reliable sources) to be completed with Lee's own pricing information, and then returned to BMO personnel."

- ¶ 40: "As 2006 drew to a close, in order to salvage their apparent wealth and reap a large unjustifiable return on their Optionable stock, Optionable and its principals (including the individual defendants here) determined to find a buyer for a substantial portion of their stock before the Unlawful Scheme became revealed and Optionable lost its lucrative business with Lee and BMO.

- ¶ 54: "In March 2008 [sic], BMO had asked Optionable to provide it with the sources and backup data of the information that Optionable had been supplying to BMO in its grid format since the fall of 2006. Optionable, led by … O'Connor … refused to comply with that request."

- ¶ 65(c): "The CFTC charged … O'Connor with violations of the Commodity Exchange Act by fraudulently and wrongfully mis-marking energy options."

In its zeal to assert theories of liability against O'Connor (and therefore, Ridgecrest, as well as the other Defendants), Plaintiff's allegations went well beyond the allegations contained in the sources referenced in the Complaint. It stands to reason that, since allegations on "information and belief" premised upon pleadings or settlements of matters that have not been adjudicated on the merits[4] are improper (*see supra*), certainly allegations that are purported to be, but are not, premised upon such improper sources also are immaterial as a matter of law. As there is no basis for the foregoing allegations based upon personal knowledge or "information and belief," such allegations are immaterial, irrelevant and prejudicial to O'Connor (and therefore, Ridgecrest) in this action and must be stricken from the Complaint as a matter of law.

---

[4] A true and correct copy of the Order of Prohibition Issued upon Consent Pursuant to Section 8(e) of the Federal Deposit Insurance Act, as Amended, *In the Matter of David Lee,* Docket No. 2008-048-E-I (Bd. of Gov., F.R.S., Wash. D.C.) ("Consent Order") is annexed to the accompanying Declaration of Marni Rae Robin, Esq. as Exh. A. David Lee's Consent Order explicitly was entered "prior to the taking of any testimony or adjudication of or finding on any issue of fact or law implied or set forth herein, and without this Order constituting an admission by Lee of any allegation made or implied by the Board of Governors in connection with this proceeding, and solely for the purpose of settlement of this matter without protracted or extended hearings or testimony." Robin Decl. Exh. A at 2. "Neither a complaint nor references to a complaint which results in a consent judgment may properly be cited in the pleadings…." *Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 893 (2d Cir. 1976).

Fed.R.Civ.P. 12(f); Fed.R.Evid. 402, 403; s*ee also, Ledford v. Rapid-Am. Corp.,* No. 86 Civ. 9116 (JFK), 1988 WL 3428, at *2 (S.D.N.Y. Jan. 8, 1988).

If the foregoing allegations are stricken from the Complaint, the remaining allegations against O'Connor are insufficient to state claims of securities fraud and common law fraud with requisite particularity against O'Connor and/or Ridgecrest pursuant to Fed.R.Civ.P. 9(b) and the PSLRA. *See, generally,* Optl. MTD at 10-13.

## II.     The Claim of Controlling Person Liability Must be Dismissed

Plaintiff has alleged controlling person liability against O'Connor pursuant to Exchange Act § 20(a). Cpt. ¶¶ 84-97. The joint and several liability of a controlling person under § 20(a) is predicated upon a primary violation of (certain) provisions of the Exchange Act and the rules and regulations promulgated thereunder for which the controlled person (or entity) is liable. 15 U.S.C. § 78t(a). *See Boguslavsky v. Kaplan,* 159 F.3d 715, 720-721 (2d Cir. 1998) (finding § 20(a) claim not collaterally estopped by liability determination for primary violation by the controlled entity in earlier proceeding in which the alleged controlling persons were not parties, while limiting the potential damages of the controlling person to the amount of damages assessed against the controlled entity in the earlier proceeding).

In order to properly plead a § 20(a) claim, Plaintiff must allege: (1) a primary violation committed by the controlled person or entity; (2) control of the primary violator by the targeted defendant; and (3) culpable participation, in a meaningful sense, by the controlling person in the primary violation. *See SEC v. First Jersey Secs., Inc.,* 101 F.3d 1450, 1472 (2d. Cir. 1996). In the Second Count of the Complaint, the Plaintiff alleges that Optionable's alleged violation of federal securities fraud (i.e., § 10(b) and Rule 10b-5 under the Exchange Act) is claimed to be the primary violation by the controlled person. Cpt. ¶¶ 86, 90-92. However, as argued in the

5

Optl. MTD (at 10-18), Plaintiff has failed to properly assert a claim for securities fraud (the "primary violation") against Optionable (the "controlled person") and, therefore, the Plaintiff's claim of liability against O'Connor (as the "controlling person" of Optionable) under § 20(a) fails as well. *Rombach v. Chang,* 355 F.3d 164, 177-78 (2d Cir. 2004) (dismissing controlling person claims where primary securities claims were properly dismissed); *Joffee v. Lehman Bros., Inc.,* No. 04 Civ. 3507 (RWS), 2005 WL 1492101, at *12 (S.D.N.Y. June 23, 2005) (dismissing § 20(a) claim where plaintiff failed to state a claim for the primary violation of § 10(b) and Rule 10b-5).

Also in the Second Count, Plaintiff alleges that O'Connor is a controlling person of Ridgecrest and "has controlling person responsibility for Ridgecrest for and as to the wrongdoing and the matters at issue here." Cpt. ¶ 89. For the same reasons asserted in Optionable's MTD (at 10-18), we contend that Plaintiff has failed to sufficiently allege that a primary violation of federal securities laws was committed by Ridgecrest (rather than Optionable), and, therefore, O'Connor cannot be held jointly and severally liable as a controlling person of Ridgecrest. Thus, for the foregoing reasons, the Second Count must be dismissed under Fed.R.Civ.P. 12(b)(6).

### III.     The Claim of Negligent Misrepresentation is Preempted by New York's Martin Act

In addition to the reasons set forth in Optionable's MTD (at 21-22), the claim of negligent misrepresentation must be dismissed because it is preempted by New York's Martin Act, N.Y. G.B.L. §§ 352 *et seq. See, e.g., Pro Bono Investments, Inc. v. Gerry,* No. 03 Civ. 4347 (JGK), 2005 WL 2429787, at *16 (S.D.N.Y. Sept. 30, 2005) (dismissing counterclaims including negligent misrepresentation due to the Martin Act's preemption of same).

New York's Martin Act authorizes the Attorney General of New York to regulate fraud and deception in the sale of securities within or from New York. *See* N.Y. G.B.L. § 352-c. The

New York Court of Appeals has held that there is no implied private right of action pursuant to the anti-fraud provisions of the Martin Act. *CPC Int'l Inc. v. McKesson Corp.,* 70 N.Y.2d 268, 276, 519 N.Y.S.2d 804, 807 (1987). Further, the overwhelming majority of courts considering the issue have held that the Martin Act preempts any common law claims within its purview, i.e., claims arising out of a securities transaction sounding in fraud that do not require a showing of intent or *scienter*. *See, e.g., Nanopierce Tech. v. Southridge Capital Mgmt LLC,* No. 02 Civ. 0767 (LBS), 2003 WL 22052894, at *2-5 (S.D.N.Y. Sept. 2, 2003) (providing a detailed analysis of the state court and federal court decisions on this issue); *Joffee,* 2005 WL 1492101 (dismissing claim of negligent misrepresentation). "[C]ourts have routinely dismissed private state law securities claims sounding in fraud or deception that do not require pleading or proof of intent, reasoning that allowing them to proceed would be, in effect, allowing private causes of action under the Martin Act." *Kassover v. UBS,* No. 08 CV 02753 (LMM), 2008 WL 5331812, at *7 (S.D.N.Y. Dec. 19, 2008) (dismissing negligent misrepresentation and other common law claims despite their artful pleading to circumvent preemption). Indeed, the Second Circuit has acknowledged, "principles of federalism and respect for the state courts' interpretation of their own laws counsel against ignoring the rulings of those New York courts that have taken up the issue." *Castellano v. Young & Rubicam,* 257 F.3d 171, 190 (2d Cir. 2001) (holding that New York's Attorney General maintains exclusive jurisdiction over the prosecution of state law securities claims sounding in fraud). Notably, in a recent decision, the Court of Appeals of New York held that a claim for common law fraud, which does require a showing of *scienter*, was preempted by the Martin Act wherein the alleged fraud was predicated upon alleged omissions of disclosures mandated by the Martin Act and regulations promulgated thereunder. *Kerusa Co., LLC v. W10Z/515 Real Estate Ltd. Pshp.,* 12 N.Y.3d 236, 244, 2009 WL 856327 (2009).

7

Because Plaintiff's negligent misrepresentation claim (which does not require a showing of intent) is premised upon fraud in connection with a securities transaction, such claim is preempted by the Martin Act and must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

## IV. This Court Should Decline Supplemental Jurisdiction over all Common Law Claims against O'Connor and Ridgecrest

The Complaint alleges the following common law claims under the laws of the State of New York against O'Connor and Ridgecrest: breach of contract and warranty ("Third Count") (O'Connor and Ridgecrest); common law fraud ("Fourth Count") (O'Connor); aiding and abetting common law fraud ("Fifth Count") (O'Connor and Ridgecrest); and negligent misrepresentation ("Sixth Count") (O'Connor and Ridgecrest).[5] To the extent that any of the foregoing claims are not dismissed by the Court pursuant to Fed.R.Civ.P. 9(b), 12(b)(6) or the PSLRA, O'Connor and Ridgecrest respectfully request the Court to decline to exercise its supplemental jurisdiction over such claims pursuant to 28 U.S.C. § 1367(c)(3) for the reasons set forth in the Optl. MTD at 24-25.

***[Remainder of page intentionally blank]***

[5] Not all of the common law claims alleged against O'Connor and Ridgecrest in the Complaint have been alleged against Optionable.

## **CONCLUSION**

For the foregoing reasons, the Complaint in its entirety, or alternatively, portions thereof, must be dismissed with prejudice as against O'Connor and Ridgecrest and without leave to amend.

Dated: New York, New York
June 19, 2009

Respectfully submitted,

**McCormick & O'Brien, LLP**

By:   /s/ Marni Rae Robin
Liam O'Brien, Esq. (LO-3930)
Marni Rae Robin (MR-3461)
42 West 38th Street, Suite 701
New York, New York 10018
Tel: (212) 286-4471
Fax: (212) 504-9574
lobrien@mcoblaw.com
mrobin@mcoblaw.com

*Attorneys for Edward O'Connor and Ridgecrest Capital, Inc.*

9