```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CMEG NYMEX INC.                                 :
                                                :
                        Plaintiff,              :
        -against-                               :
                                                :    No. 1:09-cv-03677 (GBD)
OPTIONABLE, INC., KEVIN CASSIDY,                :
PIERPONT CAPITAL, INC, EDWARD                   :    ORAL ARGUMENT REQUESTED
O'CONNOR, RIDGECREST CAPITAL, INC.              :
and MARK NORDLICHT,                             :
                                                :
                        Defendant.              :
                                                :
-------------------------------------------------------------X
```

## MEMORANDUM OF LAW IN SUPPORT OF MARK NORDLICHT'S MOTION TO DISMISS THE COMPLAINT

Eliot Lauer (EL 5590)
Rachael R. Yocum (RY 7456)
**CURTIS, MALLET-PREVOST, COLT
 & MOSLE LLP**
101 Park Avenue
New York, New York  10178-0061
Tel:  (212) 696-6000
Fax:  (212) 697-1559

*Attorneys for Defendant Mark Nordlicht*

Defendant Mark Nordlicht respectfully submits this memorandum of law in support of his motion to dismiss CMEG NYMEX Inc.'s ("NYMEX" or "Plaintiff") Complaint under Federal Rules of Civil Procedure 8(a)(2), 9(b), and 12(b)(6), and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4 ("PSLRA").

## PRELIMINARY STATEMENT

Nordlicht served as the non-executive chairman of Optionable's board of directors during the period at issue in the Complaint. Nordlicht was never employed by Optionable, never served in an executive capacity at the company, and was not involved in the day-to-day operations of the company.

Plaintiff CMEG NYMEX Inc. ("NYMEX") asserts several claims against Nordlicht: (i) a securities fraud claim under Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder (Count 1); (ii) a "control person" claim under Section 20(a) that seeks to hold Nordlicht vicariously liable for the alleged securities fraud committed by Optionable and/or defendants Cassidy and O'Connor (Count 2); (iii) a claim for aiding and abetting common law fraud (Count 5); (iv) a claim for negligent misrepresentation (Count 6); and (v) a claim for breach of contract and warranty (Count 3). In addition to the reasons set forth below, all of these claims should be dismissed for the reasons set forth in Optionable, Inc.'s Memorandum in Support of Its Motion to Dismiss the Complaint and to Strike Certain Allegations as Immaterial ("Optionable Mem." or "Optionable's Memorandum"), which Nordlicht incorporates by reference.

1

## ARGUMENT

Supplementing Optionable's Memorandum, Counts 1 through 3 and Counts 5 through 7 should be dismissed as against Nordlicht for the additional reason that the complaint fails to set forth any particular facts concerning Nordlicht.

### I. Plaintiff Fails To State A Claim For Fraud Pursuant to Section 10(b) or Rule 10b-5 Based On The Alleged "Unlawful Scheme" As Against Nordlicht

NYMEX asserts its Section 10(b) and Rule 10b-5 claims entirely on information and belief, taking all of its allegations directly from several court actions brought by the SEC, CFTC, the United States, and the Federal Reserve Board against Optionable, Cassidy, and O'Connor (but, notably, not Nordlicht). Compl. ¶¶ 14-15. **None of the court actions,** upon which NYMEX relies for its Section 10(b) and Rule 10b-5 claims, **name as a defendant, or even mention, Nordlicht.** Indeed, NYMEX does not provide a single fact connecting Nordlicht to the alleged "unlawful scheme."[1]

For this reason and for the reasons stated in Optionable's Memorandum (pp. 10-18), Count 1 of the Complaint for violation of Section 10(b) and Rule 10b-5 should be dismissed as against Nordlicht.

### II. As Against Nordlicht, Plaintiff Fails To Allege Facts Giving Rise To A Strong Inference of Scienter In Connection With Either Its Section 10(b) and Rule 10b-5 Claims Or Its Claim Of Aiding And Abetting Common Law Fraud

NYMEX's conclusory allegations that Nordlicht acted with scienter in furtherance of fraud do not meet the strict pleading requirements of Rule 9(b) or the PSLRA. Under both Rule 9(b) and the PSLRA, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind . . . tak[ing] into account plausible opposing inferences." *Coronel v. Quanta Capital Holdings Ltd.*, No. 07 Civ.

---

[1] NYMEX also does not allege Count 4 of the Complaint for common law fraud against Nordlicht.

2

1405 (RPP), 2009 WL 174656, at *25 (S.D.N.Y. Jan. 26, 2009) (quotation marks and citations omitted). For an inference of scienter to be strong, "a reasonable person [must] deem [it] cogent and at least as compelling as any opposing inference one could draw from the facts alleged. *Tellabs, Inc. v. Maker Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

The Complaint in this case is devoid of any substantive factual allegations indicating that Nordlicht acted with an intent to deceive or defraud. The Complaint provides no evidence that Nordlicht actually knew of the alleged "unlawful scheme." Instead, the Complaint states in conclusory fashion: "As Chairman, a founder, a director, and a principal of Optionable, Nordlicht had access to all relevant information about its operations, and (if he did not know of it) could have learned of the 'Unlawful Scheme' by mere investigation." Compl. ¶ 73. Such allegations, however, fail to plead the requisite state of mind for a claim under Section 10(b). *See, e.g., Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994) (conclusory allegations that company's CEO and COO "knew or were reckless in not knowing" that bank's reported loan reserve was inadequate failed to satisfy pleading requirement for scienter). Plaintiffs cannot satisfy the heightened pleading requirements of the PSLRA simply by alleging that Nordlicht was part of the group of "high-level executives or directors" at Optionable who, "by virtue of their responsibilities as senior officers and directors," were aware of the company's alleged false statements "or acted with reckless disregard for the truth." Compl. ¶ 82-83; *see Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 53 (2d Cir. 1995) (allegations that defendants "must have known" of facts merely because of their positions as corporate officers did not pass muster because a defendant's "lack of clairvoyance" did not amount to securities fraud). Rather, Plaintiffs must allege specific information that Nordlicht – who served as <u>non-executive</u> chairman and was not involved in the company's day-to-day operations – possessed specific

3

information alerting him to the falsity of the alleged misstatements. *See Novak v. Kosaks*, 216 F.3d 300, 309 (2d Cir. 2000) (where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information).

In addition, NYMEX cannot rely on Nordlicht's private sale of shares to NYMEX to raise the required strong inference of scienter for a Section 10(b) claim or for a claim of aiding and abetting common law fraud. When all the facts concerning the stock sale are weighed, and all nonculpable explanations for Nordlicht's conduct are considered, it is clear Plaintiffs have not met Rule 9(b)'s pleading requirements or the PSLRA's exacting requirements for pleading fraud.

The circumstances surrounding the NYMEX transaction clearly demonstrate that maximizing immediate profit was <u>not</u> Nordlicht's primary motivation for entering into the NYMEX agreement. The NYMEX transaction, culminating in the Stock Warrant Purchase Agreement ("SWPA"), involved, *inter alia*, Optionable and NYMEX. The transaction created a joint marketing and technology-sharing relationship between Optionable and NYMEX, providing incentives for both companies to help grow the business of the other. Specifically, NYMEX agreed to: (i) host Optionable's OPEX trading platform in NYMEX's data center; (ii) provide Optionable with computer and networking hardware, software, bandwidth, and ancillary infrastructure and services reasonably necessary to interconnect OPEX with NYMEX's ClearPort market gateway to trading and clearing services; (iii) provide space for up to twenty of Optionable's brokers on NYMEX's trading floor; and (iv) develop a joint marketing plan to benefit Optionable and NYMEX. *See* SPWA, Exs. H and I (Declaration of Michael G. Bongiorno ("Bongiorno Decl."), Ex. 6). These considerations by NYMEX were aimed at benefiting both Optionable and Nordlicht (who maintains a significant share interest in Optionable). Given that the focus of the NYMEX transaction was to benefit Optionable, the sale

of stock by Nordlicht as part of that transaction does not raise any inference – much less a strong inference – that Nordlicht acted with an intent to defraud.

Moreover, even after Nordlicht's sale of shares to NYMEX, he retained millions of Optionable shares and made no further sales. *See, e.g., In re Advanta Corp. Secs. Litig.*, 180 F.3d 525, 541 (3d Cir. 1999) (insider's post-sale retention of a "sizable percentage" of company stock undermined inference of scienter). Indeed, by holding onto the rest of his shares during that period – as the price of Optionable stock rose as high as $8.00 – Nordlicht passed up the opportunity to collect over $40 million in stock sale proceeds. Thus, the fact that Nordlicht sold a portion of his shares to NYMEX at a discounted price of $2.69 per share in exchange for NYMEX's marketing and technology consideration does not establish an intent to defraud. *See Ronconi v. Larkin*, 253 F.3d 423, 435 (9th Cir. 2001) (even though insiders' stock sales occurred during the period of alleged inflation, such sales did not raise a strong inference of scienter when they occurred prior to the most significant increases in the stock price).

Accordingly, and for the reasons set forth in Optionable's Memorandum (pp. 21-22), NYMEX's Section 10(b) claim (Count 1) and its claim for aiding and abetting common law fraud (Count 5) should be dismissed as against Nordlicht.

### III.   NYMEX Fails To State A Control Person Claim Against Nordlicht Under Section 20(a) Of The Exchange Act

NYMEX alleges that Nordlicht and others are liable as "control persons" under Section 20(a) of the Exchange Act. However, the conclusory allegations contained in this claim are wholly inadequate to establish control person liability as against Nordlicht.

Section 20(a) of the Exchange Act provides that:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such

>controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a). The Second Circuit has held that in order to establish a *prima facie* case of control person liability, a plaintiff must show: (i) a primary violation by the controlled person, (ii) control of the primary violator by the targeted defendant, and (iii) that the controlling person was in some meaningful sense a culpable participant in the fraud perpetrated by the controlled person. *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998); *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996), *cert. denied*, 522 U.S. 812 (1997). The control person claim against Nordlicht should be dismissed because the Complaint fails to plead either a primary violation by Optionable (the controlled person) or culpable participation by Nordlicht in Optionable's alleged fraud.

The first requirement for a control person claim under Section 20(a) is that a plaintiff must plead a primary violation of Section 10(b) or Rule 10b-5 by the purported "controlled person." See *First Jersey*, 101 F.3d at 1472. As set forth in Optionable's Memorandum of Law and as set forth above, the Complaint fails to state a claim of primary liability against Optionable. *See* Optionable Mem., pp. 10-18; Sections I & 2, *supra*. Accordingly, because no primary violation has been alleged, NYMEX's Section 20(a) claim against Nordlicht must be dismissed. *See Rombach v. Chang*, 355 F.3d 164, 177-78 (2d Cir. 2004); *In re GeoPharma, Inc. Sec. Litig.*, No. 04-9463 (SAS), 2005 WL 2431518, at *12 (S.D.N.Y. Sept. 30, 2005).

The control person claim against Nordlicht also fails because the Complaint does not allege facts demonstrating that he was, in any meaningful sense, a culpable participant in any purported fraud at Optionable. *Boguslavsky*, 159 F.3d at 720; *First Jersey*, 101 F.3d at 1472. The Second Circuit has held that "[t]he intent of Congress in adding [Section 20] ... was

6

obviously to impose liability only on those directors who fall within its definition of control and who are in some meaningful sense culpable participants in the fraud perpetrated by controlled persons." *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1299 (2d Cir. 1973) (*en banc*); see also *Mishkin v. Ageloff*, No. 97-2690 (LAP), 1998 WL 651065, at *75 (S.D.N.Y. Sept. 23, 1998) (finding that the heightened pleading standards of the PSLRA apply to claims under Section 20(a)). NYMEX alleges only that "Nordlicht had direct oversight responsibility (i.e. to oversee Optionable's business and operations) as a director and as Chairman of Optionable's Board of Directors." Compl. ¶ 87. The mere fact that Nordlicht served as the company's non-executive chairman does not – in and of itself – adequately plead that Nordlicht was a culpable participant in any alleged fraud by Optionable. *See, e.g., Mishkin*, 1998 WL 651065, at *24 (dismissing Section 20(a) claims on the ground that, in order to prevail under Section 20(a), a plaintiff must come forward with "proof that the defendant acted with a particular state of mind," namely, "particularized facts of the controlling person's conscious misbehavior as a culpable participant in the fraud" (citing PSLRA)).

Because NYMEX does not set forth any facts establishing that Nordlicht was, in any meaningful sense, a culpable participant in an alleged fraud by Optionable, the Section 20(a) claim (Count 2) should be dismissed as against Nordlicht.

### IV. NYMEX Fails To State A Claim For Negligent Misrepresentation As NYMEX Fails To Allege With Particularity That Nordlicht Made A Single False Or Misleading Material Statement

NYMEX's claim for negligent misrepresentation should be dismissed as against Nordlicht for the reasons set forth in Optionable's Memorandum (pp. 21-22) on the ground that NYMEX did not and cannot plead the existence of the special relationship between itself and the

defendants necessary to plead a claim of negligent misrepresentation. In addition, NYMEX has failed to plead its negligent misrepresentation with the required particularity.

If a plaintiff's "negligent misrepresentation claim is based upon the same set of facts [as those] upon which [its] fraud claim is grounded, Rule 9(b) applies." *Liberty Mut. Ins. Co. v. Luxury Transp. Management Inc.*, Civ. Action No. 07-0608(RJD)(JO), 2009 WL 1033177, *7 n.9 (E.D.N.Y. April 16, 2009). NYMEX claims that Nordlicht and others, though certain warranties in the SWPA, negligently misrepresented that Optionable's SEC filings were accurate and not misleading, and that defendants were operating within the law. As set forth in Optionable's Memorandum (pp. 10-18), none of the allegations regarding false or misleading statement in Optionable's SEC filings or regarding "unlawful" activity are pled with sufficient particularity to survive a motion to dismiss and otherwise fail to state a claim.

For these reasons, NYMEX's claim of negligent misrepresentation (Count 6) should be dismissed as against Nordlicht.

## V.     NYMEX Fails To State A Claim For Breach Of Warranty

To survive a motion to dismiss under Rules 12(b)(6) and 8(a)(2), the complaint must push NYMEX's claims "across the line from conceivable to plausible." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (U.S. 2009) (interpreting pleading requirements under Fed. R. Civ. P. 8(a)(2)). While the Court is constrained to accept the complaint's allegations as true at this stage (though Nordlicht vigorously disputes many of them), this principle is "inapplicable to legal conclusions" or to "a legal conclusion couched as a factual allegation." *Id.*; *see also SEC v. Pentagon Capital Mgmt. PLC*, No. 08 Civ. 3324 (RWS), 2009 WL 320608, at *12 (S.D.N.Y. Feb. 10, 2009) ("mere "conclusions of law or unwarranted deductions' need not be accepted") . The Court can "begin by identifying pleadings that, because they are no more than conclusions,

are not entitled to the assumptions of truth," and then consider whether the remaining factual allegations in the Complaint "plausibly suggest an entitlement to relief." *Iqbal*, 129 S.Ct. at 1949.

NYMEX claims that Nordlicht breached two warranties in the SWPA: (1) a warranty that Optionable's SEC statements were true and not misleading, and (2) a warranty that Optionable and its directors were conducting business in compliance with laws. *See* Compl. ¶ 50. NYMEX's claim for breach of warranty fails as against Nordlicht because NYMEX fails to provide any non-conclusory allegations that any SEC filings were false or misleading or that any of the defendants were not in compliance with laws as warranted. *See* Optionable Mem. pp. 10-18.

### A. NYMEX Fails To State A Claim For Breach Of Warranty Based On The Claim That Optionable's SEC Filings Contained Material False Or Misleading Statements

As set forth in Optionable's Memorandum (pp. 13-18), Optionable's SEC filings were not false or misleading, and therefore do not provide the basis for a breach of warranty claim. Contrary to the three allegations upon which NYMEX bases its claim for breach of warranty concerning the SEC filings: (1) Optionable's 2005 and 2006 10-KSBs simply did not claim that Optionable was providing an independent service; (2) these same filings disclosed how counterparty commissions depended on Optionable's business with BMO; and (3) Optionable was not required to disclose Cassidy's conviction of long-ago. *Id.* Accordingly, there is no basis whatsoever upon which to claim that Nordlicht breached any warranty regarding the accuracy of Optionable's SEC filings. As such, NYMEX's claim that Nordlicht breached such a warranty fails to meet the pleading requirements of Rule 8(a)(2) that claims must be alleged such that they are pushed "across the line from conceivable to plausible." *Iqbal*, 129 S.

Ct. at 1949). Accordingly, NYMEX's claim for breach of warranty (Count 3) should be dismissed as against Nordlicht.

### B. NYMEX Fails To State A Claim For Breach Of Warranty Based On Failure Of Optionable And/Or Individual Defendants' Failure to Comply With Laws

The sole basis for NYMEX's breach of warranty claim that defendants were acting in compliance with laws is the alleged existence of what NYMEX brands "the Unlawful Scheme" and the "False Pricing Scheme" in which Optionable allegedly misrepresented to BMO that the bid and offer quotes it transmitted were derived from independent sources. As set forth in Optionable's Memorandum (pp. 13-18), however, NYMEX has failed to plead that Optionable ever communicated to BMO that Optionable's bid and offer quotes were derived from independent sources. In addition, the CFTC, one of the sources on which NYMEX purports to rely (*id.* ¶ 14 (citing "recent court actions" including the CFTC complaint); *id.* ¶ 70(b) (alleging representations of lawful operation was false because Optionable and the other defendants were violating "commodity laws")), has made clear that Optionable and the other individual defendants are "not alleged to have engaged in Lee's mismarking or mis-valuation [sic], or even know about Lee's mismarking." Pl. Opp. To Optionable's Mot. to Dismiss, No. 1:08-cv-09962-GBD, at 11 (S.D.N.Y. April 3, 2009) (Bongiorno Decl. Ex. 4).

The Complaint simply never states what was unlawful about the alleged actions of the defendants. *Id.*, at 13-18. Instead, NYMEX merely brands the alleged actions the "Unlawful Scheme" and the "Fixed Pricing Scheme." Merely labeling certain actions unlawful is not sufficient to meet the pleading requirements of Rule 8(a)(2) as such legal conclusions "are not entitled to the assumptions of truth." *Iqbal*, 129 S.Ct. at 1949. Accordingly, NYMEX's claim for breach of warranty (Count 3) should be dismissed as against Nordlicht.

## VI. The Court Should Decline To Exercise Supplemental Jurisdiction Over The Breach of Contract Claim Against Nordlicht

As set forth in Optionable's Memorandum (pp. 24-25), the Court should decline to exercise supplemental jurisdiction over any common law claims against Nordlicht.

## CONCLUSION

The Complaint fails to satisfy the pleading requirements of Federal Rules of Civil Procedure 8(a)(2) and 9(b) and the PSLRA with respect to each of the claims against Nordlicht. Accordingly, Counts 1 through 3 and 5 through 7 of the Complaint should be dismissed as against Nordlicht.

Dated: New York, New York
June 19, 2009

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP

By: _____
Eliot Lauer (EL 5590)
Rachael R. Yocum (RY 7456)
101 Park Avenue
New York, New York 10178-0061
Tel: (212) 696-6000
Fax: (212) 697-1559
*Attorneys for Defendant Mark Nordlicht*

11