UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CMEG NYMEX INC.                                  :
                                                 :
                    Plaintiff,                   :
        -against-                                :
                                                 :   No. 1:09-cv-03677 (GBD)
OPTIONABLE, INC., KEVIN CASSIDY,                 :
PIERPONT CAPITAL, INC., EDWARD                   :   ORAL ARGUMENT REQUESTED
O'CONNOR, RIDGECREST CAPITAL, INC.               :
and MARK NORDLICHT,                              :
                                                 :
                    Defendant.                   :
                                                 :
------------------------------------------------------------X


# MARK NORDLICHT'S REPLY MEMORANDUM
# IN SUPPORT OF HIS MOTION TO DISMISS THE COMPLAINT

                                    Eliot Lauer
                                    Jason P. Gottlieb
                                    Rachael R. Yocum
                                    **CURTIS, MALLET-PREVOST, COLT
                                      & MOSLE LLP**
                                    101 Park Avenue
                                    New York, New York  10178-0061
                                    Tel:  (212) 696-6000
                                    Fax:  (212) 697-1559

                                    *Attorneys for Defendant Mark Nordlicht*

Defendant Mark Nordlicht respectfully submits this reply memorandum of law in further support of his motion to dismiss NYMEX's Complaint.[1]

## PRELIMINARY STATEMENT

Optionable's memoranda amply detail why the Complaint should be dismissed in its entirety.[2] But more particularly, the complaint should be dismissed as against Nordlicht: NYMEX alleges **not a single fact** connecting Nordlicht to any alleged unlawful scheme or fraud. NYMEX recycled allegations from other Optionable-related complaints filed by class action plaintiffs (a complaint that was dismissed with prejudice) and by various governmental agencies (none of which even mentions Nordlicht, much less names him as a defendant). And NYMEX claims to have conducted its "own investigation" for "over two years." Opp. Br. 2 n.2. After all that investigation, the most concrete allegation NYMEX could muster of any wrongdoing by Nordlicht is two supposed non-actions: that he "allowed" others at Optionable not to respond to BMO's request for some backup data, and then failed to disclose that non-event to NYMEX.

Pleading such fraud by inaction requires more specific factual allegations; some meaningful context that would transform a non-event into a culpable, deliberate decision not to act when action is required. But NYMEX does not allege that Nordlicht had **any** involvement whatsoever in **any** purported misstatement or omission to NYMEX. NYMEX does not allege that BMO's request – even if Nordlicht knew of it – should have raised any red flags for him; that Nordlicht (or even Optionable) had any duty to provide that data to BMO; or that Nordlicht should (or could) have known at the time that BMO's question or Optionable's lack of response was material, or that Nordlicht had any other duty to disclose it to NYMEX.

---

[1] All defined terms are used as in Nordlicht's Memorandum of Law in Support of his Motion to Dismiss.
[2] Nordlicht fully supports and incorporates the arguments set forth in Optionable's Memorandum of Law and Reply memorandum in support of its Motion to Dismiss.

Thus, the Complaint falls far short of what is necessary to plead fraud, aiding and abetting fraud, or control person liability against Nordlicht. NYMEX's other claims also fail: its negligent misrepresentation claim is duplicative of its breach of warranty claim, which itself is unsustainable because NYMEX fails sufficiently to allege that Optionable did not submit materially correct SEC filings or comply with relevant laws.

## ARGUMENT

I. **Plaintiff Fails To Allege Scienter Against Nordlicht**

In its Opposition, NYMEX theorizes that Nordlicht must have been aware of an alleged fraud by others at Optionable because (i) he supposedly "supported" a decision by others not to provide BMO with additional information, and then supposedly did not disclose that decision to NYMEX; (ii) he was the chairman and a significant shareholder of Optionable; and (iii) NYMEX purchased some of his shares of Optionable. Opp. Br. 30. These assertions do not come close to the standard for pleading scienter as a matter of law. To allege scienter by reckless disregard, a plaintiff must allege facts evincing "conscious recklessness – i.e., a state of mind **approximating actual intent**, and **not merely a heightened form of negligence**." *South Cherry Street, LLC v. Hennessee Group LLC*, 573 F.3d 98, 109 (2d Cir. 2009) (emphasis in original). Such recklessness requires "conduct that at the least is highly unreasonable and which represents an extreme departure from the standards of ordinary care," or "evidence that the defendant failed to review or check information that they had a duty to monitor, or ignored obvious signs of fraud…." *Id.* (internal quotation marks and citations omitted). Further, such allegations must render "an inference of scienter at least as likely as any plausible opposing inference." *Id.* at 111 (internal quotation marks omitted) (*quoting Tellabs Inc. v. Makor Issue & Rights, Ltd.*, 551 U.S. 308, 328 (2007)). NYMEX's three allegations fall far short.

<u>First</u>, NYMEX asserts, in conclusory terms, that Nordlicht learned that BMO was questioning certain price quotes by asking Cassidy and O'Connor for sources and backup data, but Nordlicht "allowed them not to comply with that very reasonable request." Then, in an attempt to convert this inaction into a fraud against NYMEX, NYMEX asserts that Nordlicht "did not advise" NYMEX of BMO's request or Optionable's refusal to comply with it, despite NYMEX's explicit request for all material information." Opp. Br. 9-10, *citing* Compl. ¶¶ 54-55.

The Complaint fails to plead facts suggesting Nordlicht knew even that BMO made any supposed request for information, much less that he knew of anyone else's response to that alleged request. NYMEX does not allege who told Nordlicht of BMO's request, nor any other reason he would have known about it. The Complaint's wholly conclusory assertion of Nordlicht's knowledge is insufficient under Rule 9(b). *See Chill v. Gen. Elec. Co.*, 101 F.3d 263, 267 (2d Cir. 1996) ("[T]he fraud alleged must be stated with particularity.") (internal citations omitted). Even if he did know of it, the Complaint does not allege that BMO's request for information should have given rise to a suspicion of fraud. NYMEX "cannot create an inference of fraud based on recklessness by simply alleging that [a defendant] might have been more cautious or concerned…." *In re Sanofi-Aventis Sec. Litig.*, No. 07-cv-10279 (GBD), 2009 U.S. Dist. LEXIS 88580, at *20 (S.D.N.Y. Sept. 25, 2009). In short, NYMEX's use of the word "allowed" – as if Nordlicht took some conscious, affirmative action – cannot disguise the lack of any specific factual allegations of scienter, *South Cherry Street,* 573 F.3d at 109 (2d Cir. 2009), let alone an actual act constituting a fraud.[3]

---

[3]   *United States ex rel. Woods v. Empire Blue Cross & Blue Shield*, No. 99-cv-4968(DC), 2002 WL 1905899, at *4 (S.D.N.Y. Aug. 19, 2002) ("In short, a plaintiff must 'set forth the who, what, when, where and how of the alleged fraud.'")

3

The Complaint also contains no particularized allegations that Nordlicht failed to disclose to NYMEX the BMO request: only that "defendants" (generally) did not disclose it. This allegation "clumps" defendants together, impermissible under Rule 9(b). *See, e.g.*, *380544 Canada, Inc. v. Aspen Technology, Inc.*, 544 F.Supp.2d 199, 218 (S.D.N.Y. 2008). Moreover, the Complaint does not set forth facts suggesting that Nordlicht should have believed BMO's request was material, or that there was any other duty to disclose such information to NYMEX. "When an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak." *Chiarella v. U.S.*, 445 U.S. 222, 235 (1980). Further, the Complaint does not allege Nordlicht personally knew, or had any reason to know, that the alleged failure to provide backup data to BMO, or the alleged failure to disclose that refusal to NYMEX, might constitute part of some alleged fraud – much less that the decision not to provide it was "highly unreasonable," "an extreme departure from the standards of ordinary care," or an "obvious sign of fraud" such that Nordlicht must have been aware of a fraud or could be liable for some purported failure to investigate. *South Cherry Street*, 573 F.3d at 111.[4]

Second, NYMEX's basis for Nordlicht's "actual knowledge or reckless indifference or failure to learn the true facts" is solely alleged to be his board position at Optionable, through which he "could have learned" of the alleged fraud. Compl. ¶¶ 73, 87.[5] As stated in Nordlicht's initial Memorandum, courts have consistently rejected such attempts to base scienter on corporate position alone. *See, e.g.*, *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir. 1995); *Shields v. Citytrust Bancorp Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994); *In re Refco, Inc.*

---

[4] The far more plausible inferences are either that Nordlicht did not know of any BMO request for information, or, if he did know, he made the reasonable choice to decline (or accede to others' decision to decline) to provide proprietary corporate information to outsiders absent a duty to do so. *Cf. Tellabs*, 551 U.S. at 328.

[5] "As Chairman, founder, a director and a principal of Optionable, Nordlicht has access to all relevant information about its operations, and (if he did not know of it) could have learned of the Unlawful Scheme by mere investigation." Compl. ¶ 73; *see also* Compl. ¶ 87 ("Nordlicht had direct oversight responsibility … as a director and as Chairman of Optionable's Board of Directors").

4

*Sec. Litig.*, 503 F. Supp. 2d 611, 653 (S.D.N.Y. 2007) (allegation that defendant was a member of board's audit committee and thus had a "duty to monitor" is insufficient to plead scienter; complaint must identify information that defendant knew about or was reckless in ignoring).[6] Other than Nordlicht's position, NYMEX provides no reason that he had, or would have had, any knowledge of any purported misstatements relating to BMO. NYMEX does not even attempt to link Nordlicht to any particular misstatement alleged in the Complaint (with the one irrelevant exception of Cassidy's record[7]). Without alleging information that would have alerted Nordlicht to the falsity of any statements made – and none is alleged – scienter cannot be sustained. *See Novak v. Kosaks*, 216 F.3d 300, 309 (2d Cir. 2000).

Third, NYMEX suggests that Nordlicht received a large sum of money from NYMEX when he sold about 50% of his Optionable shares to NYMEX, so the court may draw an inference of conscious concealment. Opp Br. 30-31; *see also* Compl. ¶ 49. But after the NYMEX sale, Nordlicht held millions of Optionable shares, about half of his original holdings, which he could have sold for up to a $40 million profit – if his motive were to profit from some yet-undiscovered wrongdoing. He made no further sales, negating any inference of scienter. *See Advanta*, 180 F.3d at 541.[8]

---

[6] *See also SEC v. Espuelas*, No. 06 Civ. 2435(RJH), 2008 WL 4414516. at *10 (S.D.N.Y. Sept. 30, 2008) at * 11 (knowledge "cannot be attributed to defendants simply because of their positions at the company") (internal citation omitted); *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 539 (3d Cir. 1999) ("[g]eneralized imputations of knowledge do not suffice, regardless of the defendants' positions within the company.").

[7] NYMEX alleges (at Compl. ¶ 73) that Nordlicht knowingly concealed Cassidy's criminal conviction. Even if true (and there is no particularized allegation that it is), it is irrelevant: it is res judicata that the conviction was not required to be disclosed because it was outside the five-year window within which such disclosure is required. *See In re Optionable Sec. Litig.*, 577 F.Supp. 2d 681, 692 (S.D.N.Y. 2008); *see also* Optionable Opening Brief at 16-17; Optionable Reply Brief at 6; Item 9 of Form 10-KSB; 17 C.F.R.§ 228.401(d), § 229.401(f).

[8] NYMEX argues that Nordlicht donated a small portion of his Optionable stock to a synagogue. Opp. Br. 33-34. Even if this act of charity were somehow construed as evidence of wrongdoing, the Complaint does not mention it at all. It is axiomatic that "facts" alleged in an opposition to a motion to dismiss do not amend the Complaint. *See In re Alstom SA*, 406 F.Supp.2d 402, 416 n.10 (S.D.N.Y. 2005); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 432 (S.D.N.Y. 2001).

These undisputed facts also provide an obvious and plausible alternative inference (as under *Tellabs*): Nordlicht wanted to form and maintain a strategic alliance with NYMEX. For that reason, the case law NYMEX cites[9] for the proposition that stock sales can constitute "motive and opportunity" are inapposite. In those cases, a defendant was selling shares in the public markets, to individuals with whom there would be no further relationship after the stock sale – not to a strategic partner in a joint venture.

## II.   NYMEX Fails To State a Claim Against Nordlicht for Aiding and Abetting Fraud

Aiding and abetting fraud requires more than reckless indifference; it requires **actual** knowledge of the fraud. *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006); *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of America Secs.*, ___ F.Supp.2d ___, 2009 WL 2876262, at *4 (S.D.N.Y. Sept. 4, 2009).[10] As detailed above, there is no allegation even that Nordlicht had scienter through reckless indifference, much less any actual knowledge of fraud.[11] Even allegations that Nordlicht **suspected** fraudulent activity – which are nowhere to be found in the Complaint – would not themselves raise an inference of actual knowledge of others' fraud. *Lerner*, 459 F.3d at 293.

Aiding and abetting also requires substantial assistance in the fraud, *see Lerner*, 459 F.3d at 292, which in turn requires allegations that the defendant's actions were "a proximate cause of the primary violation." *Armstrong v. McAlpin*, 699 F.2d 79, 92 (2d Cir. 1983).[12] Inaction does not support a claim of substantial assistance, except when "in conscious

---

[9] Opp. Br. 32, *citing In re Suprema Specialties, Inc. Secs. Litig.*, 438 F.3d 256 (3d. Cir. 2006); *Stevelman v. Alias Research Inc.*, 174 F.3d 79 (2d Cir. 1999); *Provenz v. Miller*, 102 F.3d 1478 (9th Cir. 1996).

[10] NYMEX faces the same heightened pleading requirements under Rule 9(b) in charging Nordlicht with aiding and abetting. *See Lerner*, 459 F.3d 273 (applying Rule 9(b) and its "strong inference" requirement to claim for aiding and abetting fraud); *Armstrong*, 699 F.2d at 92-93 (same).

[11] *See also Ryan v. Hunton & Williams*, No. 99-5938, 2000 WL 1375265, at *9 (E.D.N.Y. Sept. 20, 2000); *Renner v. Chase Manhattan Bank*, No. 98-926, 2000 WL 781081, at *12 (S.D.N.Y. June 16, 2000).

[12] "Allegations of a 'but for' causal relationship are insufficient." *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 63 (2d Cir. 1985).

6

and reckless violation of a duty to act," *id.* at 91. The Complaint does not come close to alleging that Nordlicht was the proximate cause of any alleged fraud. It does not even allege that Nordlicht had any duty to provide the information in question to NYMEX. *Cf. Chiarella*, 445 U.S. at 235. Thus the aiding and abetting count must be dismissed.

### III.     NYMEX Fails To State a Claim Against Nordlicht for Control Person Liability

As an initial matter, there can be no control person liability without an underlying primary violation. *See Rombach v. Chang*, 355 F.3d 164, 177-78 (2d Cir. 2004); *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998). As described in Optionable's memoranda, there is no underlying violation here. *See* Optionable Br. at 10-18; Optionable Reply Br. at 1-6.

As stated *supra*, NYMEX also has not alleged that Nordlicht had **any** participation in any alleged fraud. Despite NYMEX's citation of some district courts in this Circuit that have disagreed as to whether a plaintiff must plead "culpable participation" for a control person claim,[13] the Second Circuit has not overturned its plain ruling that "to establish a prima facie case of liability under § 20(a), a plaintiff must show … 'that the controlling person was in some meaningful sense a culpable participant' in the primary violation.'" *Boguslavsky*, 159 F.3d at 720, *quoting S.E.C. v. First Jersey Sec. Inc.*, 101 F.3d 1450, 1472-73 (2d Cir. 1996), *cert. denied*, 522 U.S. 812 (1997); *see also ATSI Commc'ns, Inc. v. The Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007); *Mishkin v. Ageloff*, No. 97-cv-2690 (LPA), 1998 WL 651065, at *25 (S.D.N.Y. Sept. 23, 1998).[14] The paucity of allegations that Nordlicht had any involvement **at**

---

[13]     *See, e.g., In re Parmalat Sec. Litig.*, 375 F.Supp.2d 278, 307-08 (examining cases and concluding that "good faith and lack of involvement" is an affirmative defense).

[14]     Contrary to NYMEX's claim (at Opp. Br. 39) that *Suez Equity Investors v. Toronto-Dominion Bank*, 250 F.3d 87, 101 (2d Cir. 2000), supports the *Parmalat* interpretation, *Suez* explicitly reiterates the culpable participation element, and confirms that the complaint in that case (unlike here) alleged such participation.

7

**all** in the alleged primary violation demonstrate that plaintiff cannot sustain a claim that Nordlicht was "meaningfully culpable."[15]

### IV. NYMEX Fails To State a Claim Against Nordlicht for Negligent Misrepresentation

NYMEX first argues that its claim for negligent misrepresentation is not subject to Rule 9(b) because that claim excludes NYMEX's scienter allegations, and thus is pleaded as mere negligence. "These nominal efforts are unconvincing where the gravamen of the complaint is plainly fraud…." *Rombach*, 355 F.3d at 172 (district courts not required to sift through allegations of fraud in search of a claim for negligence).[16] Here, NYMEX seeks damages "as a result of defendants' securities and common law fraud and breach of warranty," Compl. ¶ 1, asserting that "This is a case about a fraud," Opp. Br. 1. The gravamen of the claims is plainly fraud; Rule 9(b) applies; and NYMEX's negligence claim fails for the same lack of specificity as its fraud claims.

But even under Rule 8(a), negligent misrepresentation will not lie where, as here, "the factual underpinning for the claim is duplicative of a breach of contract claim." *Ixe Banco, S.A. v. MBNA America Bank, N.A.*, No. 07-cv-0432(LAP), 2008 WL 650403, at *12 (S.D.N.Y.

---

[15] To the extent the Court is inclined to consider whether the Second Circuit's *Boguslavsky* rule should be superseded by the S.D.N.Y. rule in *Parmalat*, we respectfully suggest that the *Boguslavsky* line of cases are better-reasoned, in light the Congressional intent behind the PSLRA and its control-person language. Congress intended to reduce abuses by plaintiffs in securities fraud cases, including the high cost of unwarranted discovery in the hopes of finding a sustainable claim. *See Lapin v. Goldman Sachs Group, Inc.*, 506 F. Supp. 2d 221, 244-49 (S.D.N.Y. 2006) (examining *Parmalat,* other cases, and House and Senate reports, and concluding that requiring a plaintiff to plead culpable participation is most consistent with Second Circuit precedent and the PSLRA) (citing H.R. Conf. Rep. No. 104-369, at 37 (1995); S. Rep. No. 104-98, at 14 (1995)).

The *Parmalat* rule would run counter to this Congressional intent. It would mean that Congress provided protections against unwarranted discovery to persons alleged to have committed fraud **personally**, but denied those same protections to persons faced with allegations of fraud committed **by others** allegedly in their control, without allegations of personal culpability. Such a rule would subject Bill Gates to a deposition every time a securities fraud suit against any Microsoft employee at any level survived a motion to dismiss – even absent any allegations against Mr. Gates other than that he was a control person. That cannot be, and should not be, the law.

[16] *See also In re Marsh & McLennan Cos. Sec. Litig.*, 501 F. Supp. 2d 452 (S.D.N.Y. 2006) ("[n]egligent misrepresentation claims must be pleaded with particularity pursuant to Rule 9(b)."); *In re Ultrafem Inc. Sec. Litig,* 91 F.Supp.2d 678 (S.D.N.Y. 2000).

Mar. 7, 2008).[17]  Absent the fraud allegations, the misrepresentation claim is solely one of a breach of the warranty, and is duplicative of that claim.  Furthermore, NYMEX's Opposition (at Opp. Br. 47) does not rescue the Complaint's utter lack of allegations of a "fiduciary duty or of the 'special relationship' which is a required element of negligent misrepresentation." *Id.*, citing *Hydro Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 20 (2d Cir. 2000).  When the complaint indicates there is only an ordinary business relationship between the parties, the negligent misrepresentation will be dismissed.  *See Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of N.Y.*, 375 F.3d 168, 189 (2d Cir. 2004); *Citibank, N.A. v. Itochu Intern., Inc.*, 01-cv-6007, 2003 WL 1797847 *5 (S.D.N.Y. Apr. 4, 2003).

## V. NYMEX Fails To State a Claim Against Nordlicht for Breach Of Warranty

NYMEX claims (at Opp. Br. 42) that Nordlicht (among others) violated the warranties in SWPA §§ 6.10 and 6.21 because Optionable's SEC filings allegedly were false or misleading, and that Optionable allegedly was aware of its officers or directors violating the law.  But the litany of alleged breaches in Complaint ¶ 70 are merely legal conclusions – that Optionable made material misstatements or omissions in SEC and CFTC filings; that Optionable's business was not being conducted legally; and that Optionable violated federal securities, commodities, and criminal laws.[18]

As shown above – and as Optionable details in its memoranda – these conclusions are unsupported by specific factual allegations of fraud or illegal activity.  The alleged misstatements or omissions in SEC filings simply do not exist:  Optionable's 2005 and 2006 10-

---

[17]  *See also* Optionable Br. 21-22 and cases cited therein.

[18]  NYMEX also claims that defendants' "concealment" of Cassidy's previous conviction breached a warranty.  NYMEX cannot pinpoint which warranty, except the general warranty that Optionable's SEC filings should be materially complete.  Given that (as described above) there was no duty to disclose that long-ago conviction, that warranty was not breached by not disclosing it in SEC filings.

9

KSBs did not claim that Optionable was providing an independent service (as NYMEX claims they do), and those same filings disclosed how counterparty commissions depended on Optionable's business with BMO.  There are no specific allegations of misstatements or omissions to the CFTC, which indeed has stated that Optionable was "not alleged to have engaged in … or even know about Lee's mismarking."  *See* Bongiornio Decl. Ex. 4, at *11.  NYMEX's ipse dixit assertions of wrongdoing do not pass the *Iqbal* test of plausibility, *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) – particularly as against Nordlicht, who is not alleged to have had **any** participation in any such conduct.[19]

## CONCLUSION

For the reasons stated above, the Complaint against Nordlicht should be dismissed with prejudice.

Dated:  New York, New York
        November 13, 2009

**CURTIS, MALLET-PREVOST,
 COLT & MOSLE LLP**

By:   /s/ Eliot Lauer
    Eliot Lauer
    Jason P. Gottlieb
    Rachael R. Yocum
    101 Park Avenue
    New York, New York  10178-0061
    Tel:  (212) 696-6000
    Fax:  (212) 697-1559
    *Attorneys for Defendant Mark Nordlicht*

---

[19] NYMEX also accuses defendants of breaching a warranty that "to the Company's Knowledge," no Company employees or agent had committed wrongdoing that would be reasonably likely to give rise to the initiation of an enforcement action by the SEC or NASD.  Compl. ¶ 50, *citing* SPWA ¶ 6.21.  The Complaint does not allege facts that give rise to an inference that Optionable itself had such knowledge, or that the knowledge of any person allegedly engaged in wrongdoing should be imputed to Optionable; or even if it did, that Nordlicht (a non-executive director) knew what others allegedly knew.